FILED

DEC 19 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TALITHA FALKENBURG, et al.,

    Plaintiff,

vs.

COUNTY OF YOLO, et al.,

    Defendants.

No. CIV-S-01-1478 DFL GGH

ORDER

INTRODUCTION

    Presently pending is plaintiffs' motion pursuant to Fed. R. Civ. P. 37, filed October 22, 2002, for preclusion and monetary sanctions against defendant County of Yolo.[1] In this civil rights action which follows an inmate suicide at the Yolo County Jail, plaintiffs seek to hold the county ("Yolo") liable, on multiple theories, for, inter alia, deliberate indifference to the decedent's medical needs. Plaintiffs must establish that Yolo had a pattern and practice of such conduct in order to find it liable. See Monell v. Department of Social Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978). Plaintiffs contend Yolo has failed to meet its discovery obligations and has violated a May 22, 2002 discovery order.

---

[1] Individual Yolo County officials have been sued; however, this motion involves only Yolo County.

Although the court finds herein that the conduct of Yolo necessitates some sanctions, albeit not the case-killing ones so vigorously argued by plaintiffs, the court also finds fault on both sides. No evidence was presented to the court that either party took advantage of the discovery planning provisions required by Fed. R. Civ. P. 26(f), or barring agreement, took any planning problems to the undersigned. Discovery problems are much more easily rectified if they are anticipated as opposed to a fait accompli. Problems involving breadth of discovery, production logistic dates, numbers of depositions, or phased discovery could have been alleviated by prior planning. Unfortunately, the discovery dynamics in this case have been "act," "react" and "no-act."

BACKGROUND

The instant motion arises primarily from plaintiffs' first motion to compel discovery from Yolo, filed April 12, 2002.[2] Yolo had totally failed to respond to plaintiffs' discovery propounded January 30, 2002. The court, hearing the motion on May 16, 2002, denied it in part and granted it in part on the record. The court also issued a memorandum order confirming that Yolo should "fully respond" to plaintiff's discovery, delivering, on or before May 23, 2002, "reasonably responsive" documents. Despite the court's order, Yolo apparently did not produce any _new_ responsive documents until June 20, 2002.[3] Thereafter, in a sort of rolling production, Yolo apparently produced on the following dates the following additional

---

[2] The court issued its order on plaintiffs' second motion on July 2, 2002. That order dealt with Yolo's failure to disclose contact information for a former inmate. The court found Yolo's behavior was not substantially justified, and levied monetary sanctions which were not timely paid by the ordered date of July 22, 2002. The July 2, 2002 order is at issue in the instant motion only insofar as it demonstrates some history of prior unjustified discovery behavior by Yolo.

[3] Some documents apparently were produced earlier, but according to plaintiffs they were duplicates of documents produced pursuant to an earlier served subpoena. The "new" documents produced on June 20 apparently were documents related to accreditation and contracts with CFMG, responsive to Requests Nos. 15 & 16.

categories of documents:[4]

July 9–Detention Facility Report & Suicide Watch Log;

August 27–pod logs;[5]

September 16--Green Book Logs;

September 18--medical care complaints, quality assurance documents, memos regarding inadequate mental health care complaints, peer review documents, jail facility reports, Title 15 compliance reports, medical statistical reports, statistical reports of inmate grievances, and complaints from city supervisors regarding mental health care delivery. [Yolo states these were all the peer review reports and quality assurance reports it had];

October 4--Supervisors Shift logs & Detention Facility Inspections;

October 23--past suicide attempt at the jail and some Detention Facility Inspections.

It is clear that Yolo failed to fully and timely respond to plaintiffs' requests to produce documents by the date set in the May oral and written orders.

THE MOTION FOR SANCTIONS

Primarily at issue in the motion for sanctions, in addition to the prejudicial effect of Yolo's belated productions, were Yolo's substantive responses to Requests Nos. 13 and 14.[6] In addition to complaining about the dilatory pace of producing what documents plaintiffs now

---

[4] The court compiled these lists from both parties briefing in support of and in opposition to the instant motion. No party's briefing was particularly helpful in assisting the court to determine exactly what was produced when. Both parties have spilled much vituperative and/or irrelevant ink, requiring excessive judicial resources in attempting to sort fact from hyperbole. To the extent errors appear, both sides have waived any complaint. The gist of the court's recitation is accurate. The point is that disclosures were not timely made, and documents dribbled in as Yolo, apparently at its leisure, discovered them.

[5] The court is uncertain whether documents were produced on this date.

[6] No. 13 sought, for 7 years past, evaluations, investigations, reports, and complaints regarding medical care at Monroe Detention Center. No. 14 sought records regarding suicides and attempted suicides for the past 5 yrs.

3

1  have received, plaintiffs especially complain that the bulk of inmate grievances and reports of
2  attempted suicides, covered by Requests Nos. 13 & 14, were not produced at all. Yolo concedes
3  it has produced few inmate grievances or attempted suicide reports. Interposing untimely burden
4  assertions to producing inmate grievances about medical care and reports of attempted suicides
5  not already produced, Yolo asserts such documents are not easily accessible because they are in
6  individual inmate files and would require searching approximately 80,000 files. Also
7  importantly at issue is whether Yolo improperly redacted certain information from the documents
8  already produced.

9  STANDARDS

10  Rule 37 authorizes "a wide range of sanctions" for a party's failure to comply with
11  discovery rules or court orders enforcing them. Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d
12  585, 589 (9th Cir. 1983). Penalizing a party "for dilatory conduct during discovery proceedings"
13  is discretionary. Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1102 (9th
14  Cir. 1981) (citing Fed. R. Civ. P. 37(a)(4)).

15  Rule 37 is flexible, but the reason for the discovery transgression is important:

16
17  If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action should not be dismissed, nor a default judgment given, and less severe
18  sanctions are the most that should be invoked.

19  8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure
20  §2284 (1994).

21  Sanctions may be imposed for a range of improper conduct specifically identified
22  in Rule 37, including delaying until after motion to produce discovery, Rule 37(a)(4), failing to
23  obey court orders directing discovery, Rule 37(b), or failing properly to respond to discovery,
24  Rule 37(d). The court may apportion expenses for discovery motions necessitated by inadequate
25  disclosure. Rule 37(a)(4);(b)(2). Rule 37 also specifically allows issue or evidence preclusion
26  sanctions for failure to obey court orders. Rule 37(b)(2)(B). Finally, Rule 37(c), specifically

directed to failures in Rule 26(a) "automatic" disclosures and Rule 26(e) failures to timely supplement previous discovery responses, permits a pot pourri of sanctions generally including all the possible sanctions under other subdivisions of Rule 37, but especially directed to precluding use of undisclosed information.[7]

In addition to Rule 37 sanctions, "[c]ourts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)); accord Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (recognizing inherent power to dismiss counterclaim for concealing discovery documents); Winn v. Associated Press, 903 F. Supp. 575, 580 (SDNY 1995) (imposing monetary sanctions for deliberately impeding discovery and willful noncompliance with document production).

Precluding evidence so that the recalcitrant party cannot support defenses is comparable to entering dismissal, which "represent[s] the most severe penalty that can be imposed." U.S. v. Kahaluu Const., 857 F.2d 600, 603 (9th Cir. 1988; accord, Valley Engineers v. Electric Engineering Co., 158 F.3d 1051 (9th Cir. 1998). Accordingly, such orders are authorized only in "extreme circumstances" of violations "due to willfulness, bad faith, or fault of that party." Kahaluu Const., 857 F.2d at 603; see also Commodity Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 770 (9th Cir. 1995)(affirming standard and upholding sanctions in egregious circumstances).[8] Bad faith does not require actual affirmations of ill will;

---

[7] Of course, this presumes that the withheld information would be "good" for the withholding party. In the event that the withheld information is "good" for the opposing party, the proper sanction would focus on issue determination.

[8] See also, e.g., Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985) ("'Where the drastic sanction of dismissal . . . [is] imposed . . . the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad

substantial and prejudicial obduracy may meet bad faith prerequisites. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002).

Five other relevant factors also determine whether severe sanctions are appropriate:

> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its docket;
> (3) the risk of prejudice to the other party;
> (4) the public policy favoring disposition of cases on their merits; and
> (5) the availability of less drastic sanctions.

Wanderer v. Johnston, 910 F.2d 652 (9th Cir. 1990) (default judgment for defendants' failure to comply with discovery); Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir.1987).

The circuit has acknowledged that "[l]ike most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just." Valley Engineers Inc. 158 F.3d at 1056. Inevitably where a court order is violated or discovery belatedly is produced, factors 1 and 2 support preclusive sanctions, and factor 4 cuts against them. Accordingly, factors 3 and 5 become the decisive factors. The court must focus on the prejudice to the party seeking sanctions and the availability of less drastic sanctions. Adriana International Corp. v. Thoeren, 913 F.2d 1046, 1412 (9th Cir. 1990). Most critical for evaluating the risk of prejudice and whether less drastic sanctions would suffice is whether the discovery violations "so damage[] the integrity of the discovery process that there can never be assurance of proceeding on the true facts." Valley Engineers Inc., 158 F.3d at 1058.

\\\\

---

faith,'" quoting Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981); G-K Properties v. Redevelopment Agency, 577 F.2d 645, 647-48 (9th Cir.1978) (bad faith crucial in Rule 37 dismissal, citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778 (1976)); Henry v. Gill Industries, Inc, 983 F.2d 943, 946, 948-49 (9th Cir.1993) (reviewing Rule 37 dismissal under multiple factors, including willfulness, bad faith or fault); Porter v. Martinez, 941 F.2d 732, 733 (9th Cir.1991) (reviewing Rule 37 default judgment pursuant to multiple factors including bad faith); Wanderer v. Johnston, 910 F.2d 652, 655-56 (9th Cir.1990) (same).

APPLICATION

Yolo did not fully or timely comply with this court's prior May 16 and 23 orders. Plaintiffs still do not have all the documents to which they are entitled. Moreover, Yolo has redacted information from some of the discovery it did produce. As to Yolo's assertion that the burden of locating the inmate grievances and reports of attempted suicides is excessive, Yolo has waived any burden objection by its failure timely and specifically to make it. See Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1102 (D.N.J. 1996); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections should be plain and specific); 8 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2173. Having waived objections by failing timely to make them, Yolo was obliged to disclose inmate grievances and records of prior suicide attempts, or make available documents for inspection as they are kept in the usual course of business. Fed. R. Civ. P. 34(b) ("A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.").[9]

Willfulness, Bad Faith, Fault.

Yolo submits that it has produced over 7,700 pages of documents as soon as they were specified and identified. The court cannot find substantial justification, however, for the "rolling production," causing delay in producing what it has produced, and the court is satisfied

---

[9] It is true that had the objections been timely made, Yolo may well have had a good opportunity to shape the ultimate production of documents given that the requests were overbroad, e.g., it is difficult to believe that even in this pattern and practice case, inmate complaints regarding not receiving desired cold medication and the like would have any significant impact involving alleged deprivation of appropriate psychiatric treatment. Moreover, plaintiffs would have to do more than simply point to a number of differing inmate complaints (inmates can be unreasonable in their perception of what medical services should be provided) in order for such complaints to have any valid nexus with the allegations herein. The validity of many individual complaints would have to be demonstrated.
Notwithstanding the above, defendants have a duty to timely determine what can or should be produced, and timely make objections with respect to those production requests to which they hold a principled belief that the requests are burdensome, unduly invade privacy and the like. Failure to take timely measures to combat burdensome requests places the court in a difficult position and ensures that discovery will be much more costly than it should have been.

that, at a minimum, Yolo is at fault in creating an unjustified delay. Likewise, the court finds Yolo at fault in redacting inmate names from disclosed documents, rather than producing them pursuant to an agreed upon protective order or one ordered by the court. No justification for such behavior appears in the record. As to the inmate grievances and the reports of attempted suicides, however, the court cannot find Yolo was willful, in bad faith, at fault, or guilty of egregious behavior in its refusal to disclose the information. While Yolo has waived is burden arguments by failure timely to assert them, Yolo has consistently informed plaintiffs' counsel that it did not intend to review 80,000 pages of documents to discover this information. Yolo may be mistaken in its belief that the belated, informal burden objection would preclude disclosure. However, the mistake does not rise to the level of egregious conduct to justify precluding evidence on plaintiffs' pattern and practice claims.

Prejudice

As to the records which have been belatedly produced, plaintiffs have been prejudiced because they took depositions of correctional officers and medical staff without benefit of later produced documents. Plaintiffs were unable, for example, to question some county correctional and medical staffer deponents about certain records belatedly produced. No satisfactory justification for the delay has been proffered by Yolo, and the court has found it was not substantially justified. Yolo also was unjustified in unilaterally redacting certain information in the documents which have been produced. While Yolo has proffered that certain redactions were made to protect third party privacy, Yolo, for the same reasons it waived its burden objections, has waived any privacy objections, which objections in any event can be met by appropriate protective order. Plaintiffs have been prejudiced by not being able to question certain persons who made complaints or reported irregularities. Finally, in addition to the prejudice occasioned by the delay, plaintiffs were prejudiced by the need to bring this motion. Accordingly, the court is satisfied that plaintiffs have been prejudiced by Yolo's belated discovery disclosures.

The amount of substantive prejudice suffered by plaintiffs due to defendants delay is more difficult to evaluate. Plaintiffs contend their experts were unable to issue reports without the delayed information.[10] As noted, the District Judge now has extended discovery deadlines, including expert discovery. Plaintiffs contend that they need to redepose certain individuals. Yolo has offered to make available for redeposition certain individuals. Plaintiffs argue they have lost the "surprise" element. That argument, however, cuts both ways. For example, plaintiffs argue that belatedly produced information contradicts testimony of witness Snow, and had they had the information they could have confronted him at the deposition. Had the information been available, however, it is equally possible that witness Snow might have testified in conformity with the now disclosed documentation.

As to information not yet disclosed, including inmate grievances, reports of attempted suicides, and redacted names, the amount of prejudice has been lessened by the extended discovery cut-off and expert report dates. Because the court will direct Yolo to further investigate concerning attempted suicides, and permit plaintiffs to review the records themselves if they believe the burden of searching them outweighs the benefit likely to be obtained, the court's confidence in the integrity of the process remains strong. As to inmate grievances about medical care, the court finds the benefit to be obtained by obtaining inmate grievances about medical care to be somewhat remote. Accordingly, the court cannot find the degree of prejudice, if any, to be significant. Plaintiffs will be permitted to review the records as they are kept in the ordinary course of business for inmate grievances if they believe the burden of searching for such is outweighed by the benefit to be obtained. As to redacted names, the prejudice, if any, can be

---

[10] The court is not persuaded that plaintiffs' experts were entirely unable to issue reports concerning their testimony on account of Yolo's dilatory discovery actions. While the belated and non-produced discovery may have had substantial impact on the ability to form opinions in the pattern and practice area, the belated and non-produced discovery would have little impact on the ability to form opinions related to the specific care that plaintiffs' decedent received, including causation opinions. Furthermore, to the extent that other defendants have not timely or properly complied with their discovery obligations, thereby leading to delay in issuance of expert opinions, such action by other defendants should not be visited upon Yolo.

1  remedied by disclosure of the names subject to an appropriate protective order.

2  <u>Integrity of the Process.</u>

3  Having found plaintiffs to be prejudiced in varying degrees, the court must now
4  determine whether the discovery violations "so damage[] the integrity of the discovery process
5  that there can never be assurance of proceeding on the true facts." The court cannot make such a
6  conclusion. In light of the extensive discovery which has taken place, and the extended
7  discovery cut off permitting depositions to be retaken (at the expense of Yolo if cause to retake
8  them is shown) and further disclosures to be made, the court cannot find the integrity of the
9  process so damaged that there is no assurance of proceeding on the true facts. The court has
10 fashioned lesser sanctions which will alleviate the prejudice and assure that the case will be
11 resolved on the merits.

12 CONCLUSION

13 While the court finds Yolo guilty of some willful behavior in its belated discovery
14 conduct, the court does not find preclusion sanctions to be justified. The discovery violations
15 may be remedied by less drastic measures. The court does find monetary sanctions to be
16 appropriate for Yolo's discovery conduct in this case. Moreover, the court will direct Yolo to
17 conduct further investigation, disclose redacted information, and make files available to plaintiffs
18 for their own review. Accordingly, Yolo's conduct has not so infected the proceedings that the
19 court entertains doubt that the case can be resolved on its merits. The integrity of the process
20 may be maintained by less drastic sanctions than preclusion.

21 Accordingly IT IS ORDERED that:

22 1. Plaintiffs' motion for preclusion sanctions is DENIED.

23 2. Plaintiffs' motion for monetary sanctions is GRANTED as follows: Plaintiffs
24 will be granted costs and expenses in bringing the instant motion. The court declines to levy
25 monetary sanctions for the prior May motion. Having reviewed the Declarations of Douglas and
26 Neville Johnson, the court will award sanctions at the hourly rate of $250.00/hr. for Neville

1 Johnson and $200.00 per hour for Douglas Johnson.  Hours expended by Rebecca Sorgen will be
2 recompensed at $100.00/hr.   The total hours allowed are as follows:
3         Neville Johnson– 6.6 hours ( 2 hour reduction for work on Reply Brief)
4         Douglas Johnson– 40 hours (5 hour reduction in time spent on drafting papers)
5         Rebecca Sorgen– 15 hours (reduction of 2 hours)
6 Therefore, sanctions are awarded in the total amount of $11,150.00.
7       3. Plaintiffs will be permitted to conduct redepositions of correctional staff and
8 medical personnel necessitated by the belated disclosures Yolo already has made.  In the event
9 plaintiffs and Yolo cannot agree on who should be redeposed, plaintiffs shall file, within 14 days
10 from the date this order is filed, declarations detailing who needs to be deposed and why.
11 Thereafter, the court will act as expeditiously as possible to resolve any disagreements.  Yolo
12 shall pay for court reporter and transcript costs as if they had noticed the retaken depositions
13 themselves.  Plaintiffs shall pay for costs of copying any deposition transcripts.
14       4. Documents previously produced in redacted form shall be produced in
15 unredacted form subject to agreed upon protective order which will protect the substantial
16 privacy rights of third parties;
17       5. As to reports of attempted suicides, plaintiffs shall provide defendants with
18 names, i.e. known, within ten days.  To the extent Yolo, after good faith inquiry of appropriate
19 personnel, can identify any inmates (even those for whom names were not given) who attempted
20 suicide within the relevant time frame, Yolo shall provide those records to plaintiffs.  Yolo shall
21 file with the court, within 14 days after this order is filed, declarations from appropriate
22 managerial personnel detailing the nature and extent of the investigation to identify such
23 attempted suicides.  As to inmate grievances, plaintiffs contend some names are available in the
24 Green Book and shift logs. (Reply at 13:45)  Plaintiffs shall provide Yolo with names within ten
25 days.  Therefore, Yolo shall provide plaintiffs with said grievances, if any.  Thereafter, if
26 plaintiffs wish to discover further attempted suicide reports, or inmate grievances about medical

1  care, Yolo shall make available to plaintiffs, as kept in the ordinary course of business, inmate
2  records from which such information can be discovered. Inmate records, if reviewed, shall be
3  subject to an appropriate agreed upon protective order.
4  DATED: December 19, 2002.

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:055
falkenburg.ord3.wpd

```
                    United States District Court
                              for the
                     Eastern District of California
                          December 19, 2002


                    * * CERTIFICATE OF SERVICE * *


                                            2:01-cv-01478


    Falkenburg

        v.

    County of Yolo

    _____


I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  December 19, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


            Justin Matthew Gingery                  VC/GGH
            Gingery Thompson and Derdowski
            4811 Chippendale Drive
            Suite 503
            Sacramento, CA   95841

            Douglas L Johnson
            Johnson and Rishwain LLP
            12121 Wilshire Boulevard
            Suite 1201
            Los Angeles, CA   90025

            Bruce Alan Kilday
            Angelo Kilday and Kilduff
            601 University Avenue
            Suite 150
            Sacramento, CA   95825

            Jerome M Varanini
            Trimble Sherinian and Varanini
            2500 Venture Oaks Way
            Suite 350
            Sacramento, CA   95833-0590

            Peter George Bertling
            Bertling and Clausen
```

15 West Carrillo Street
Suite 100
Santa Barbara, CA  93101

Jack L. Wagner, Clerk

BY: _____
      Deputy Clerk

```
              United States District Court
                          for the
                Eastern District of California
                      December 20, 2002


              * * CERTIFICATE OF RE-SERVICE * *


                                        2:01-cv-01478


    Falkenburg

         v.

    County of Yolo

    _____
```

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on December 20, 2002, I RE-SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
         Justin Matthew Gingery                    VC/GGH
         Gingery Thompson and Derdowski
         4811 Chippendale Drive
         Suite 503
         Sacramento, CA   95841

         Douglas L Johnson
         Johnson and Rishwain LLP
         12121 Wilshire Boulevard
         Suite 1201
         Los Angeles, CA   90025

         Bruce Alan Kilday
         Angelo Kilday and Kilduff
         601 University Avenue
         Suite 150
         Sacramento, CA   95825

         Jerome M Varanini
         Trimble Sherinian and Varanini
         2500 Venture Oaks Way
         Suite 350
         Sacramento, CA   95833-0590

         Peter George Bertling
         Bertling and Clausen
```

15 West Carrillo Street
Suite 100
Santa Barbara, CA   93101

                        Jack L. Wagner, Clerk

BY: _____
      Deputy Clerk